FILED

2020 Sep-04  PM 04:31
U.S. DISTRICT COURT
N.D. OF ALABAMA

## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| **MAURICE MYERS,** | } | |
| | } | |
| **Plaintiff,** | } | |
| | } | **Case No.:  2:19-CV-01398-RDP** |
| **v.** | } | |
| | } | |
| **JEFFERSON COUNTY COMMISSION,** | } | |
| **et. al.,** | } | |
| | } | |
| **Defendants.** | } | |

## <u>MEMORANDUM OPINION AND ORDER</u>

This matter is before the court on Defendant Srikanth Karra's Motion to Dismiss Counts Two and Three of Plaintiff's Third Amended Complaint. (Doc. # 27). The Motion has been fully briefed (*see* Docs. # 27-29), and it is ripe for decision.  After careful review, and for the reasons explained below, Defendant's Motion is denied.

## I.   Background[1]

This is an employment discrimination case where Plaintiff Maurice Myers alleges race discrimination and retaliation claims against Defendants Jefferson County Commission ("JCC") and Srikanth Karra, in his individual capacity. (Doc. # 23). On April 13, 2020, the court granted in part and denied in part JCC's Motion to Dismiss Plaintiff's Second Amended Complaint. (Doc. # 21). Specifically, the court dismissed with prejudice all of Plaintiff's claims, except for his claims

---

[1] "A Rule 12(b)(6) motion questions the legal sufficiency of a complaint; therefore, in assessing the merit of a Rule 12(b)(6) motion, the court must assume that all the factual allegations set forth in the complaint are true." *Mays v. U.S. Postal Serv.*, 928 F. Supp. 1552, 1557-58 (M.D. Ala. 1996). Thus, for resolving the Motions to Dismiss (*see* Docs. # 27-29), the court treats the well-pleaded allegations in Plaintiff's Third Amended Complaint (Doc. # 23) as true.

of race discrimination under Title VII (against JCC) and 42 U.S.C. §§ 1981, 1983 (against Karra). (*Id.*). The court also granted Plaintiff leave to amend his complaint to state a section 1983 retaliation claim against Karra. Because the court has already recited the facts of this case at length in its April 13, 2020 Memorandum Opinion and Order (Doc. # 21), the following factual background will detail only those facts that are relevant to this Motion.

Plaintiff is an African-American male who was hired by JCC on September 24, 2007. (Doc. # 23 at 2, ¶¶ 8-9). Plaintiff was hired as the Manager of Program Management. (*Id.*). In August 2017, Plaintiff filed an internal complaint alleging that JCC had subjected him to disparate treatment based on his race and to retaliation because of his complaints about a former supervisor. (*Id.* at 5, ¶ 33). JCC "launched an investigation that continued until January 4, 2018." (*See id.* ¶ 34). Thereafter, JCC "issued findings indicating that [JCC] subjected [Plaintiff] to discrimination based on race and retaliation for several actions it took regarding Plaintiff's pay as it compared to his white comparators and in his assignments." (*Id.* ¶ 35). Plaintiff alleges that, although his complaint was referred to JCC's legal department, no action was ever taken. (*Id.* ¶ 36).

On October 22, 2018, Plaintiff applied for a promotion to the Deputy Chief Information Officer ("Deputy CIO") position but did not receive it. (*Id.* ¶ 39). Instead, Mahesh Garlapatim, a person of South Asian ancestry, was selected for the position. (*Id.* at 6, ¶ 41). Plaintiff alleges that Karra, as the CIO, participated in the interview and job selection processes for that job. (*Id.* ¶ 42).

On March 11, 2019, Plaintiff applied for an Enterprise Service Manager position. (*Id.* ¶ 48). On March 14, 2019, Plaintiff was informed he was qualified for the position. (*Id.* ¶ 49). Plaintiff approached Karra to inform him that he had applied, and Karra stated that "he knew Plaintiff applied for the position and he had spoken with the Human Resources Director, Michelle Rodriguez, about the application." (*Id.* at 7, ¶¶ 52, 54). Karra told Plaintiff that he would speak

with Rodriguez further "because he understood that Plaintiff had a potential lawsuit against the County." (*Id.* ¶ 55). That same day, Plaintiff spoke with Rodriguez about his application. (*Id.* ¶ 56). Thereafter, Karra closed the position and did not select anyone to fill it. (*Id.* ¶ 58). On multiple occasions, Plaintiff inquired as to why he was not selected, let alone interviewed. (*Id.* at 8, ¶ 59). The Enterprise Service Manager remains vacant, Plaintiff has not been considered for a promotion, and he has not "returned to the pay grade level of his peers of European ancestry." (*Id.* ¶¶ 35,38, 62-64). Plaintiff asserts that the position remained vacant despite JCC's policy that "where there is only one applicant for a position and that person is minimally qualified, the person gets the position without assessment or review." (*Id.* ¶ 60).

On February 1, 2019, Plaintiff filed his second Charge of Discrimination with the Equal Employment Opportunity Office ("EEOC").[2] (Doc. # 1-2). In that Charge, Plaintiff alleged race discrimination and retaliation. (*Id.*). On May 30, 2019, the EEOC issued a Dismissal and Notice of Rights. (Doc. # 1-1). On August 26, 2019, Plaintiff filed this lawsuit. (Doc. # 1). Plaintiff has since amended his complaint on three occasions: on December 20, 2019, January 14, 2020, and May 7, 2020, respectively. (Docs. # 10, 16, 23). Plaintiff's Third Amended Complaint contains three counts: (1) race discrimination—failure to promote—under Title VII of the Civil Rights Act of 1964 (against JCC); (2) race discrimination—failure to promote—under 42 U.S.C. § 1983 (against Karra); and (3) retaliation under § 1983 (against Karra). (Doc. # 23).

## II.  Standard of Review

The Federal Rules of Civil Procedure require that a complaint provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). However, the complaint must include enough facts "to raise a right to relief above the speculative

---

[2] On November 8, 2011, Plaintiff filed his first Charge of Discrimination with the EEOC. (Doc. # 17-3 at 4).

level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Pleadings that contain nothing more than "a formulaic recitation of the elements of a cause of action" do not meet Rule 8 standards, nor do pleadings suffice that are based merely upon "labels and conclusions" or "naked assertion[s]" without supporting factual allegations. *Id.* at 555, 557. In deciding a Rule 12(b)(6) motion to dismiss, courts view the allegations in the complaint in the light most favorable to the non-moving party. *Watts v. Fla. Int'l Univ.*, 495 F.3d 1289, 1295 (11th Cir. 2007).

To survive a Rule 12(b)(6) motion to dismiss, a complaint must "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although "[t]he plausibility standard is not akin to a 'probability requirement,'" the complaint must demonstrate "more than a sheer possibility that a defendant has acted unlawfully." *Id.* A plausible claim for relief requires "enough fact[s] to raise a reasonable expectation that discovery will reveal evidence" to support the claim. *Twombly*, 550 U.S. at 556.

In considering a motion to dismiss, a court should "(1) eliminate any allegations in the complaint that are merely legal conclusions; and (2) where there are well-pleaded factual allegations, 'assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.'" *Am. Dental Assn. v. Cigna Corp.*, 605 F.3d 1283, 1290 (11th Cir. 2010) (quoting *Iqbal*, 556 U.S. at 679). That task is context specific and, to survive the motion, the allegations must permit the court based on its "judicial experience and common sense . . . to infer more than the mere possibility of misconduct." *Iqbal*, 556 U.S. at 679. If the court determines that well-pleaded facts, accepted as true, do not state a claim that is plausible, the claim shall be dismissed. *Twombly*, 550 U.S. at 570.

III.   **Analysis**[3]

   A.   **Plaintiff Plausibly Alleges a Failure-to-Promote Claim Against Karra**

In Count Two of his Third Amended Complaint, Plaintiff alleges that Karra, in his individual capacity, discriminated against Plaintiff by failing to promote him to the Deputy CIO position because of his race, in violation 42 U.S.C. §§ 1981, 1983.[4] In its April 13, 2020 Memorandum Opinion and Order, the court determined that Plaintiff has plausibly alleged a section 1983 failure-to-promote claim against Karra. (Doc # 21 at 9). The court sees no reason to revisit this determination. Therefore, for the same reasons already discussed in that Memorandum Opinion and Order (Doc. # 21), Plaintiff has plausibly alleged a failure-to-promote claim against Karra.

   B.   **Plaintiff Plausibly Alleges a Retaliation Claim Against Karra.**

In Count Three of his Third Amended Complaint, Plaintiff alleges that Karra, in his individual capacity, retaliated against Plaintiff by failing to consider him for the Enterprise Service Manager position, in violation of 42 U.S.C. §§ 1981, 1983. (Doc. # 23). Defendant's Motion (Doc. # 27) argues that Plaintiff has failed to allege facts sufficient to satisfy any element of his retaliation claim. The court disagrees.

---

[3] Karra contends that Plaintiff has failed to point to any facts showing that Karra has or had any racial animus towards or bias against Plaintiff. While this argument may be advanced in a Rule 56 motion, it is inappropriate at the Rule 12(b)(6) stage. *Jackson v. BellSouth Telecomm.*, 372 F.3d 1250, 1270-72 (11th Cir. 2004) ("Pleading a *McDonnell Douglas prima facie* case [is] not necessary to survive a motion to dismiss."); *see Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 510-11 (2002). Here, Karra has failed to demonstrate "beyond doubt that [Plaintiff] can prove no set of facts in support of his claim which would entitle him to relief." *See Jackson*, 372 F.3d at 1262 (quotation omitted).

[4] "[Section] 1981 encompasses a cause of action for retaliation. This cause of action includes retaliation for a plaintiff's opposition to race discrimination, whether or not he personally is the victim of that race discrimination." *Tucker v. Talladega City Schs.*, 171 F. App'x 289, 300 (11th Cir. 2006). And, for a section 1981 claim to provide an independent cause of action against a state actor (as is the case here), it must be brought under the remedial provisions of section 1983—which Plaintiff did. *Id.*

To succeed on a claim for retaliation, a plaintiff must show that: (1) he engaged in protected activity or expression; (2) he suffered an adverse employment action; and (3) the adverse employment action was causally connected to the protected conduct. *Furcron v. Mail Ctrs. Plus, LLC*, 843 F.3d 1295, 1310 (11th Cir. 2016); *Goldsmith v. Bagby Elevator Co.*, 513 F.3d 1261, 1277 (11th Cir. 2008) (applying the same three-part test to retaliation claims under § 1981 and Title VII).

Plaintiff plausibly alleges all three elements of a retaliation claim against Karra. First, Plaintiff alleges that he engaged in a statutorily protected activity when he filed an internal "complaint of discrimination and retaliation." (Doc. # 23 at 10, ¶¶ 88, 106; *see* Doc. # 28 at 4). As our Circuit has said, protected activities include "internal complaints of discrimination to superiors, complaints lodged with the Equal Employment Opportunity Commission, and discrimination-based lawsuits." *Walton-Horton v. Hyundai of Ala.*, 402 F. App'x 405, 408 (11th Cir. 2010); *see Locascio v. BBDO Atlanta, Inc.*, 56 F. Supp. 3d 1356, 1364 (N.D. Ga. 2014) ("[A]n employee may engage in protected activity by 'voicing complaints of [racial] discrimination' to his employer.") (quotation omitted).

Second, Plaintiff alleges that he suffered an adverse employment action when he was not considered for the Enterprise Service Manager position. (Doc. # 23 at 12, ¶¶ 99-103). Indeed, adverse actions include "depriving [employees] of employment opportunities." *Crawford v. Carroll*, 529 F.3d 961, 970 (11th Cir. 2008); *see Danner v. Sumter Cty. Bd. of Educ.*, 2013 WL 754956, at *4 (N.D. Ala. Feb. 26, 2013).

Third, Plaintiff alleges that the adverse action he experienced is causally related to his protected activity. (Doc. # 23 at 12, ¶ 106). Karra argues in response that Plaintiff fails to allege causation. (Doc. # 27 at 15). But, Karra's argument fails. Causation is "construed broadly so that

'a plaintiff merely has to prove that the protected activity and the negative employment action are not completely unrelated.'" *Pennington v. City of Huntsville*, 261 F.3d 1262, 1266 (11th Cir. 2001) (quoting *Olmsted v. Taco Bell Corp.*, 141 F.3d 1457, 1460 (11th Cir. 1998)). To be sure, Plaintiff alleges that his protected activity and the adverse action are related. Specifically, Plaintiff alleges that Karra told Plaintiff that he would speak with Human Resources further (about his employment opportunity) *because* he understood that Plaintiff had a potential lawsuit against the County (a protected activity). (Doc. # 23 at 7, ¶ 55). *See Walton-Horton*, 402 F. App'x at 408. And, Plaintiff alleges that he was not hired after that conversation with Karra (that is, he was deprived of an employment opportunity) despite JCC's policy of hiring a qualified applicant without assessment or an interview where there is only one qualified applicant. (*Id.* ¶ 58-60). Although not stated as precisely as possible, the court liberally construes these allegations, and finds that Plaintiff has alleged facts that show Karra acted adversely because of Plaintiff's protected activity.

Further, as Plaintiff correctly notes, Defendant's argument that Plaintiff cannot show causation because Karra did not make any hiring decision, at least at this stage of the proceedings, lacks merit under the "cat's paw" principle. (Doc.  # 28 at 6). This principle imputes the discriminatory animus of a subordinate that may influence hiring decisions onto the decision-making superior. *See Llampallas v. Mini-Circuits, Lab, Inc.*, 163 F.3d 1236, 1249 (11th Cir. 1998) ("[T]he harasser is the decisionmaker, and the titular "decisionmaker" is a mere conduit for the harasser's discriminatory animus."). Plaintiff alleges, regardless of who retains actual authority to make hiring decisions, that Karra has influence over hiring decisions. (Doc. # 23 at 6, ¶ 42).

Thus, at this point, when evaluating Plaintiff's claims under the applicable pleading standards discussed above, Plaintiff plausibly alleges a retaliation claim under sections 1981 and 1983 against Karra, in his individual capacity.

####    C.        Karra is Not Entitled to Dismissal Based on Qualified Immunity at this Point.

Karra argues in his Reply brief that Plaintiff's claims against him are barred by the doctrine of qualified immunity. (Doc. # 29 at 3-5). Qualified immunity shields "government officials performing discretionary functions ... from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). While qualified immunity is typically addressed at summary judgment, it may be "raised and considered on a motion to dismiss." *Corbitt v. Vickers*, 929 F.3d 1304, 1311 (11th Cir. 2019) (quoting *St. George v. Pinellas Cty.*, 285 F.3d 1334, 1337 (11th Cir. 2002)). Indeed, the "driving force" behind the creation of the qualified immunity doctrine was a desire to ensure that "'insubstantial claims' against government officials [will] be resolved prior to discovery." *Anderson v. Creighton*, 483 U.S. 635, 640 n.2 (1987). Accordingly, the Supreme Court "repeatedly ha[s] stressed the importance of resolving immunity questions at the earliest possible stage in litigation." *Hunter v. Bryant*, 502 U.S. 224, 227 (1991). "It is therefore appropriate for a district court to grant the defense of qualified immunity at the motion to dismiss stage if the complaint 'fails to allege the violation of a clearly established constitutional right'" *Gonzalez v. Reno*, 325 F.3d 1228, 1233 (11th Cir. 2003) (quoting *Chesser v. Sparks*, 248 F.3d 1117, 1121 (11th Cir. 2001)).[5]

Qualified immunity is analyzed under an "objective reasonableness standard, giving a government agent the benefit of the doubt unless [his] actions were so obviously illegal in the light of then-existing law that only an official who was incompetent or who knowingly was violating the law would have committed them." *GJR Investments, Inc. v. County of Escambia, Fla.*, 132

---

[5] The court recognizes that the heightened pleading standard formerly applied by the Eleventh Circuit to section 1983 cases where a defendant could assert qualified immunity no longer applies after *Iqbal*. *Randall v. Scott*, 610 F.3d 701, 709-10 (11th Cir. 2010).

F.3d 1359, 1366 (11th Cir. 1998). The Eleventh Circuit has cautioned that, "[b]ecause qualified immunity shields government actors in all but exceptional cases, courts should think long and hard before stripping defendants of immunity." *GJR Investments, Inc.*, 132 F.3d at 1366 (quoting *Lassiter v. Alabama A & M Univ. Bd. Of Trs.*, 28 F.3d 1146, 1149 (11th Cir. 1994)). After a defendant who has asserted a qualified immunity defense shows that he was acting within his discretionary authority,[6] a plaintiff must establish two elements in order to show that the defendant is not entitled to qualified immunity: (1) the defendant's conduct violated a statutory or constitutional right; and (2) the violation of plaintiff's statutory or constitutional right was "clearly established." *Skop v. City of Atlanta, Ga.*, 485 F.3d 1130, 1136-37 (11th Cir. 2007).

As already discussed, with respect to Counts Two and Three, Plaintiff has sufficiently alleged facts which would show that Karra's conduct violated Plaintiff's rights under 42 U.S.C. § 1983. *Vickers*, 929 F.3d at 1311 (quoting *Griffin Indus., Inc. v. Irvin*, 496 F.3d 1189, 1199–1200 (11th Cir. 2007) ("First, she 'must establish that the defendant violated a constitutional [or statutory] right.'")).

Of course, Plaintiff must also show that the right that Karra allegedly violated was clearly established. *Vickers*, 929 F.3d at 1311 (quoting *St. George*, 285 F.3d at 1337) ("[i]t is proper to grant a motion to dismiss…when the 'complaint fails to allege the violation of a clearly established constitutional right.'"). A right is clearly established when "it is sufficiently clear that a reasonable official' has "fair warning" that what he is doing violates that right. *Id.* (quoting *Creighton*, 483 U.S. at 640); *Vaughan v. Cox*, 343 F.3d 1323, 1332 (11th Cir. 2003). Specifically, courts find that there is fair warning of a clearly established right if there are "materially similar case[s]…decided

---

[6] For analyzing Karra's qualified immunity argument, neither party disputes that Karra acted within his discretionary authority to participate in the interview and job selection processes for the Deputy CIO position and Enterprise System Manager position. (Doc. # 23 at 6, ¶ 42, at 7, ¶¶ 57-58); (Doc. # 29 at 4).

by the United States Supreme Court, the United States Court of Appeals for the Eleventh Circuit," or the Alabama Supreme Court.[7] *Vickers*, 929 F.3d at 1312. And, to be sure, there is a clearly established right to be free from intentional, race-based, and/or sex-based employment discrimination under 42 U.S.C. § 1983. *Smith v. Lomax*, 45 F.3d 402, 407 (11th Cir. 1995) ("We need not engage in a lengthy discussion of the patently obvious illegality of racial discrimination in public employment.); *see Yeldell v. Cooper Green Hosp., Inc.*, 956 F.2d 1056, 1064 (11th Cir. 1992) (citing *Washington v. Davis*, 426 U.S. 229, 239-41 (1976)). Further, the same applies to the right to be free from retaliation for filing a complaint charging racial discrimination. *Bryant v. Jones*, 575 F.3d 1281, 1309 (11th Cir. 2009) (explaining that retaliatory employment actions are clear violations of statutory rights); *Webster v. Fulton Cty., Ga.*, 283 F.3d 1254, 1257 (11th Cir. 2002). Based on controlling case law, a reasonable official has a fair warning that race-based discrimination and retaliating against an employee for making race-based discrimination complaints violates clearly established rights. The well-pleaded facts in Plaintiff's pleadings allege that Karra violated Plaintiff's clearly established rights by discriminating against him and retaliating against him.[8] Therefore, Karra is not entitled to a qualified immunity defense at this point; although, Karra is not precluded from raising this defense again once a Rule 56 record

---

[7] The court notes that finding materially similar cases is not necessarily a condition precedent to finding a clearly established right. *Vickers*, 929 F.3d at 1312. Indeed, where there are not materially similar cases, there are other methods for showing that a right is clearly established. *Id.*; *see Bryant v. Jones*, 575 F.3d 1281, 1309 (11th Cir. 2009) (quoting *Creighton*, 483 U.S. at 640) ("Plaintiff need not show that the government official's conduct specifically has been held unlawful, but rather that "in the light of pre-existing law the unlawfulness [was] apparent."); *see also Hope v. Pelzer*, 536 U.S. 730, 741 (2002) ("Officials can still be on notice that their conduct violates established law even in novel factual circumstances.").

[8] In the Eleventh Circuit, a "defendant is entitled to qualified immunity only when, among other things, 'the record indisputably establishes that the defendant in fact was motivated, at least in part, by lawful considerations.'" *McMillan v. DeKalb Cty., Ga.*, 211 F. App'x 821, 823 (11th Cir. 2006) (quoting *Stanley v. City of Dalton, Ga.*, 219 F.3d 1280, 1296 (11th Cir.2000)); *Foy v. Holston*, 94 F.3d at 1535 (holding that defendant is entitled to qualified immunity on motion for summary judgement where "the record makes it clear that Defendants' acts were actually motivated by lawful considerations without which they would not have acted."). At this point, there is nothing in the record that suggests that Karra's actions were motivated by lawful considerations.

is established.

## IV.    Conclusion

For the foregoing reasons, Defendant's Motion to Dismiss (Doc. # 27) is **DENIED**.

Plaintiff may proceed on Counts One, Two, and Three of his Third Amended Complaint.

**DONE** and **ORDERED** this September 4, 2020.

**R. DAVID PROCTOR**
UNITED STATES DISTRICT JUDGE