FILED
2022 Jun-03 PM 03:34
U.S. DISTRICT COURT
N.D. OF ALABAMA

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| MAURICE MYERS, | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
| v. | )  CASE NO.:  2:19-cv-01398-RDP |
| | ) |
| JEFFERSON COUNTY COMMISSION and SRIKANTH KARRA, | ) |
| | ) |
|     Defendants. | ) |

## MEMORANDUM OPINION

Before the court are two Motions for Summary Judgment filed by (1) Defendant Jefferson County Commission (Doc. # 44) and (2) Defendant Srikanth Karra (Doc. # 49). Plaintiff Maurice Myers has conceded, and the court agrees, that Defendant Jefferson County Commission's Motion for Summary Judgment (Doc. # 44) is due to be granted. (Doc. # 56). Defendant Karra's Motion (Doc. # 49) has been fully briefed (Docs. # 50, 55, 57) and is ripe for review. For the reasons discussed below, Defendant Karra's Motion for Summary Judgment (Doc. # 49) is due to be granted.

**I.   Background[1]**

This is a race discrimination and retaliation action filed by Plaintiff Maurice Myers ("Myers") against his employer, Defendant Jefferson County Commission ("JCC"), and Defendant

---

[1] The facts set out in this opinion are gleaned from the parties' submissions and the court's own examination of the evidentiary record. All reasonable doubts about the facts have been resolved in favor of the non-moving party. *See Info. Sys. & Networks Corp. v. City of Atlanta*, 281 F.3d 1220, 1224 (11th Cir. 2002). These are the "facts" for summary judgment purposes only. They may not be the actual facts that could be established through live testimony at trial. *See Cox v. Adm'r U.S. Steel & Carnegie Pension Fund*, 17 F.3d 1386, 1400 (11th Cir. 1994).

Srikanth Karra ("Karra") in his individual capacity. (Doc. # 23). Myers' Third Amended Complaint asserts the following three (3) claims: (1) race discrimination -- failure to promote -- under Title VII of the Civil Rights Act of 1964 (against the JCC) ("Count One"); (2) race discrimination -- failure to promote -- under 42 U.S.C. § 1983 (against Karra) ("Count Two"); and (3) retaliation under § 1983 (against Karra) ("Count Three"). (*Id.*). Myers has conceded that summary judgment is due to be granted as to Count One against the JCC (Doc. # 56) and, in addition, has withdrawn Count Two against Karra. (Doc. # 55 at 2 n.1). The court addresses the claim still asserted by Myers in Count Three below.

**A.     Parties**

Myers is an African American male who was hired as a Manager of Program Management for the Jefferson County Information Technology Department in September 2007. (Doc. # 23 ¶¶ 8-9). In 2012, following implementation of a reduction in force by the County, Myers became a Manager of Systems Analysis. (*Id*. ¶¶ 15, 17). Myers has remained in this role since that time.[2] (Doc. # 51-3 at 17).

Srikanth Karra's career with Jefferson County began in 2003 when he was hired as the Director of IT for Cooper Green – a position he held until 2013, when he resigned to pursue a position as a Chief Information Officer ("CIO"). (Doc. # 50 at 3). Jefferson County hired Karra as the Chief Information Officer in February 2018. (*Id.*). In this role, Karra was tasked with identifying ways to improve the IT Department, such as the creation of key jobs. (*Id.* at 3).

---

[2] In November 2013, the County moved Plaintiff to Cooper Green Mercy Health Services "to take on the responsibilities of Director of Information Services" – a position Karra previously held prior to his promotion to Chief Information Officer. (Doc. # 23 ¶¶ 21, 46). In addition to the Director responsibilities, Plaintiff was still expected to fulfill his responsibilities as Manager of Systems Analysis. (*Id.* ¶ 21).

B.      **Deputy Chief Information Officer Position**

Karra, along with the County Human Resources Department and a consultant, developed the Deputy Chief of Information Officer position in order to establish IT governance for Jefferson County. (Docs. # 50 at 4; # 23 ¶ 69). The County advertised the position in November 2018. (Doc. # 23 at 4). A total of ninety-one (91) applicants applied, including Myers. (Doc. # 23 at 5). In order to meet the minimum qualification requirements, applicants were required to possess a bachelor's degree in computer sciences, management information systems, information technology, business administration, public administration, or a related field. (Doc. # 51-7 at 4). Myers admits that he did not have a bachelor's degree in any of the required fields. (Doc. # 51-3 at 30). The County ultimately offered the position to an applicant whose qualifications met the minimum requirements and who also met certain preferred qualifications. (Docs. # 50 at 23; # 51-14).

C.      **Enterprise Sales Manager Position**

In addition to the Deputy CIO role, Karra identified a need for a position that would emphasize the IT Department's Application Division. (Doc. # 50 at 11). This position -- later identified as the Enterprise Systems Manager ("ESM") position -- was developed by Karra in collaboration with the City of Birmingham and the Jefferson County Personnel Board.[3] (*Id.*). Karra helped draft the job description. (Doc. # 51-6 at 19). The Personnel Board ultimately posted the position at the request of the City of Birmingham. (Docs. # 50 ¶ 82 (undisputed); # 55 at 21).

The Personnel Board advertised the position as open for applications between March 10 and March 23, 2019. (Docs. # 55-1 at 7; # 51-19 at 2-3). Myers applied for the position on March

---

[3] The Jefferson County Personnel Board oversees the administration of the civil service merit system for the Jefferson County Commission and seventeen (17) cities (including the City of Birmingham). (Doc. # 51-10 at 1). As such, the Personnel Board advertises for open and vacant positions for all merit positions within its jurisdiction. (*Id.*).

3

11, 2019. (Doc. # 55-1 at 27). That same day, Myers emailed the Director of Human Resources for the JCC with a copy of his application confirmation. (Doc. # 55-1 at 27). The Director forwarded Myers' email to the Deputy Director of the Personnel Board, stating, in relevant part:

> [I]t is our desire to hire [Myers] in the Enterprise Systems Manager position, Grade 36. This is a very important and somewhat time sensitive situation and we would like to hire him in the position as soon as possible. I believe you mentioned that we could do a quick certificate with his name if he qualifies. Did I understand that correctly?

(Doc. # 55-1 at 27). The Deputy Director confirmed that "if the County wished to hire someone into the Enterprise Systems Manager" role, they "would need to submit a cert[ification] request[4] for the position." (Doc. # 55-1 at 7). The County submitted a certification request on March 11, 2019, which the Personnel Board issued on April 10, 2019. (*Id.*).

On March 14, 2019, Myers received an application determination from the Personnel Board confirming that his application met the experience and education requirements for the position. (Doc. # 55-1 at 31). At some point after Myers submitted an application, Myers informed Karra that he had applied for the position. (Doc. # 51-6 at 20).

During that conversation, Karra allegedly told Myers that "he would be talking about the situation with Human Resources further, because he understood that [Myers] had a potential lawsuit against the County." (Doc. # 23 ¶ 55). Karra did, in fact, speak with Human Resources. When the former Human Resources Director asked Karra if he would consider Myers for an ESM position, Karra responded that he "absolutely" would. (Docs. # 50 ¶ 94; 51-6 at 19).

Myers alleges that Karra closed the ESM position twelve (12) days after Myers submitted his application. (Doc. # 23 ¶ 58). In support of this allegation, Myers asserts that Karra had the

---

[4] A "certification request" is a list of applicants deemed eligible for a particular position after the Personnel Board has conducted an initial screening of all applicants. (Doc. # 51-11 at 18).

authority to withdraw a posting and that the Human Resources Director notified him that Karra had withdrawn the posting. (Docs. # 55 ¶ 87; # 51-3 at 45).

While the City of Birmingham ultimately hired an ESM, the County did not. (Doc. # 50 at 13). Almost a year after the Personnel Board posted the position, on February 28, 2020, the Deputy Director of the Personnel Board noticed that the County had not filled the ESM role. (Doc. # 55-1 at 29). The Deputy Director confirmed the County did not have a need to fill the position and ordered the closure of the posting. (*Id.*).

### D. Myers' Complaints and EEOC Charge

Myers made numerous internal complaints of race discrimination throughout the course of his employment, most of which allege that he was improperly paid. During his tenure at Cooper Green, Myers alleges that Willie Wright, a subordinate Caucasian employee, received the same pay as Myers. (Doc. # 23 ¶¶ 27-28). Myers also contends that another Caucasian employee, Joe White, Manager of Infrastructure, "ha[d] the same job responsibilities" as Myers and was paid "significantly more" than Myers. (*Id.* ¶¶ 29-31). Myers also made multiple internal complaints of pay disparity to his superiors. (*Id.* ¶ 32).

In August 2017, Myers filed an internal complaint alleging that the JCC "subjected him to disparate treatment and retaliation" on the basis of race. (Doc. # 23 ¶ 33). Myers alleges the JCC "issued findings indicating that [the JCC] subjected [Myers] to discrimination based on race and retaliation for several actions it took regarding Myers' pay as it compared to his white comparators and in his assignments." (*Id.* ¶¶ 35). The complaint was then referred to the JCC's legal department and Myers contends no further action was taken. (*Id.* ¶ 36).

In December 2018, Karra submitted an internal complaint in which he complained that Karra had failed to provide him with an annual evaluation and/or change his pay. (Doc. # 51-3 at

48-49). More specifically, Myers alleges that withholding an evaluation was racially motivated because Karra provided evaluations to Caucasian employees, but not to him. (*Id.*).

On February 1, 2019, Myers filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") alleging that the JCC discriminated and retaliated against him due to his race. (Doc. # 55-1 at 38-39). The only allegation made by Myers in the EEOC Charge that had not been previously adjudicated was a single claim that he was not hired as the Deputy CIO by the County because of his race. (Doc. # 50 ¶ 117).

### E.     Present Lawsuit

Myers filed a lawsuit against the JCC on August 27, 2019, asserting, among other items, that the JCC discriminated against him on the basis of his race by not considering him for the ESM position. (Doc. # 1 ¶¶ 84-92). On January 14, 2020, Myers filed an amended complaint and asserted the present retaliation claim against Karra based on Karra's alleged failure to hire and/or promote Myers to the ESM position. (Doc. # 23 ¶ 86-107). Myers filed his operative pleading on May 7, 2020. (Doc. # 23).

## II.    Standard of Review

Under Federal Rule of Civil Procedure 56, summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The party asking for summary judgment always bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the pleadings or filings which it believes demonstrate the absence of a genuine issue of material fact. *Id.* at 323. Once the moving party has met its burden, Rule 56 requires the non-moving party to go beyond the pleadings and -- by

pointing to affidavits, or depositions, answers to interrogatories, and/or admissions on file -- designate specific facts showing that there is a genuine issue for trial. *Id.* at 324.

The substantive law will identify which facts are material and which are irrelevant. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). All reasonable doubts about the facts and all justifiable inferences are resolved in favor of the non-movant. *See Allen v. Bd. of Pub. Educ. for Bibb Cty.*, 495 F.3d 1306, 1314 (11th Cir. 2007); *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted. *See id.* at 249.

When faced with a "properly supported motion for summary judgment, [the nonmoving party] must come forward with specific factual evidence, presenting more than mere allegations." *Gargiulo v. G.M. Sales, Inc.*, 131 F.3d 995, 999 (11th Cir. 1997). As *Anderson* teaches, under Rule 56(c) a plaintiff may not simply rest on his allegations made in the complaint; instead, as the party bearing the burden of proof at trial, he must come forward with at least some evidence to support each element essential to his case at trial. *See Anderson*, 477 U.S. at 252. "[A] party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of his pleading, but ... must set forth specific facts showing that there is a genuine issue for trial.'" *Id.* at 248 (citations omitted).

Summary judgment is mandated "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp.*, 477 U.S. at 322. "Summary judgment may be granted if the non-moving party's evidence is merely colorable or is not significantly probative."

*Sawyer v. Sw. Airlines Co.*, 243 F. Supp. 2d 1257, 1262 (D. Kan. 2003) (citing *Anderson*, 477 U.S. at 250-51).

"[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249. "Essentially, the inquiry is 'whether the evidence presents a sufficient disagreement to require submission to the jury or whether it is so one-sided that one party must prevail as a matter of law." *Sawyer*, 243 F. Supp. 2d at 1262 (quoting *Anderson*, 477 U.S. at 251-52); *see also LaRoche v. Denny's, Inc.*, 62 F. Supp. 2d 1366, 1371 (S.D. Fla. 1999) ("The law is clear ... that suspicion, perception, opinion, and belief cannot be used to defeat a motion for summary judgment.").

The Eleventh Circuit has interpreted *Celotex* to require that, as to issues on which the nonmovant would bear the burden of proof at trial, a

> moving party is not required to support its motion with affidavits or other similar material negating the opponent's claim in order to discharge this initial responsibility. Instead, the moving party simply may show []—that is, point[] out to the district court—that there is an absence of evidence to support the non-moving party's case. Alternatively, the moving party may support its motion for summary judgment with affirmative evidence demonstrating that the non-moving party will be unable to prove its case at trial.

*Fitzpatrick*, 2 F.3d at 1115 (quoting *U.S. v. Four Parcels of Real Property*, 941 F.2d 1428, 1437 (11th Cir. 1991)). And, where the moving party has met this initial burden by showing that there is an absence of evidence supporting the nonmoving party's case, the nonmoving party must

> respond in one of two ways. First, he or she may show that the record in fact contains supporting evidence, sufficient to withstand a directed verdict motion, which was "overlooked or ignored" by the moving party, who has thus failed to meet the initial burden of showing an absence of evidence. Second, he or she may come forward with additional evidence sufficient to withstand a directed verdict motion at trial based on the alleged evidentiary deficiency.

*Id.* (internal citations omitted).

8

**III.     Discussion**

Although Myers initially asserted three counts, he has since conceded that summary judgment is due to be granted as to Count One[5] (Doc. # 56) and has withdrawn his claim as to Count Two. (Doc. # 55 at 2 n.1). Accordingly, the court need only address Count Three – Myers' retaliation claim against Karra in his individual capacity.

Myers asserts individual liability against Karra for retaliation, pursuant to 42 U.S.C. §§ 1981 and 1983. (Doc. # 23). Specifically, Myers asserts that Karra retaliated against him for filing complaints (both internally and with the EEOC) by failing to hire and/or promote him to the ESM position. (*Id.*). In order to make out an individual-liability retaliation claim under § 1981, a plaintiff must make "an affirmative showing linking the individual defendant with the discriminatory action." *Perkins v. Kushla Water Dist.*, 21 F. Supp. 3d 1250, 1261 (S.D. Ala. 2014) (internal quotation marks omitted), *aff'd*, 598 Fed. App'x 899 (11th Cir. 2015); *Washington v. City of Adamsville,* No. 2:21-CV-1658-RDP, 2022 WL 468039, at *4 (N.D. Ala. Feb. 15, 2022). A plaintiff must also establish that an individual defendant was "personally involved" in the employment decision. *Perrymond v. Lockheed Martin Corp.*, 2009 WL 2474226, at *6 (N.D. Ga. Aug. 12, 2009) (citing *Burstein v. Emtel, Inc.*, 137 Fed. App'x 205, 208 (11th Cir. 2005) (unpublished decision) (finding no reason to hold supervisor liable under § 1981 where there was no evidence that the supervisor "participated in the decision" not to issue the plaintiff a contract)). *See also Johnson v. Fam. Prac. & Inj. Ctr., Inc.*, 437 F. Supp. 3d 1108, 1119 (M.D. Fla. 2020) (applying this standard to a retaliation claim). Likewise, for individual liability to attach under 42

---

[5] With respect to Count One, the court agrees that there is no genuine dispute of material fact as to whether the JCC unlawfully failed to promote Myers to the Deputy CIO role. Fatal to Myers' claim is his admission that he did not hold a bachelor's degree in any of the requisite subjects and, thus, was unqualified for the position. (Doc. # 51-3 at 30). *See Aristyld v. City of Lauderdale*, 543 F. App'x 905, 907 (11th Cir. 2013) (requiring that a plaintiff asserting a failure to promote claim show that he was qualified for the relevant position).

U.S.C. § 1983, the individual defendant must have the power to make decisions. *See Quinn v. Monroe Cnty.*, 330 F.3d 1320, 1326 (11th Cir. 2003) (internal citation omitted) ("The 'decisionmaker' inquiry addresses who has the power to make official decisions and, thus, be held individually liable."). Authority to "merely recommend" or influence decisions is not sufficient. *Quinn*, 330 F.3d at 1328.

Here, there are simply no triable issues of fact regarding Karra's personal liability for any alleged retaliation. In an effort to create a triable issue of fact, Myers argues that Karra personally prevented Myers from assuming the ESM position based on the following: (1) his belief that Karra "closed" the ESM position when he withdrew the Personnel Board posting; (2) testimony that the Director of Human Resources relayed to Myers that Karra had closed the position; and (3) evidence of Karra's early involvement in developing the position. (Doc. # 55 at 25). Noticeably absent from Myers' argument is any substantial evidence in the Rule 56 record indicating that Karra had the power to influence -- or actually make -- hiring decisions regarding the ESM position.

First, Myers's testimony that he *believed* that Karra "closed" the ESM position by withdrawing the Personnel Board posting is not competent Rule 56 evidence. (Doc. # 51-3 at 45). Indeed, the record reflects merely that – Meyers "believes" that Karra closed the ESM position. The record makes clear that he has no personal knowledge of this allegation. *Pace v. Capobianco*, 283 F.3d 1275, 1278-80 (11th Cir. 2002) (affirming the district court's decision to exclude evidence that was not based on personal knowledge or adequately supported).

Second, the assertion is conclusory and lacks specific supporting facts. *See Evers v. General Motors Corp.*, 770 F.2d 984, 986 (11th Cir. 1985) ("[C]onclusory allegations without specific supporting facts have no probative value."). Myers has not identified any specific

supporting facts with respect to his belief that Karra had the authority to close the posting. (Doc. # 51-3 at 45).

Third, the "withdrawal" Myers refers to appears to simply relate to the date that the Personnel Board stopped accepting applications for the position and is not indicative of any hiring decision.[6] (Doc. # 51-3 at 44-45). To the extent that Myers points to the email sent by the County's Human Resources Director expressing the County's desire to hire Myers for the ESM position, there is no evidence that Karra knew of, saw, or contributed to that email. Put simply, Myers offers no evidence showing that Karra individually had the authority to make any hiring decision and/or did, in fact, decide not to hire Myers.

Fourth, even assuming arguendo that the Human Resources Director stated that Karra closed the posting twelve (12) days after Myers had applied (Doc. # 55 ¶ 87; # 51-3 at 45), Myers has not even shown that closing the application period amounted to a decision not to hire him nor that it prevented him from being hired for the position. Again, the undisputed evidence reveals that the position was not closed until the Deputy Director of the Personnel Board ordered that it be closed almost a year after the Personnel Board posted the position. (Doc. # 55-1 at 29). There is no evidence in the summary judgment record indicating that Karra had any knowledge of, or participation in, the Deputy Director's actions.

Fifth, Myers essentially invites the court to assume, without sufficient Rule 56 evidence, that Karra's early involvement in creating the ESM position translates to involvement in making final employment decisions. (Doc. # 55 at 25). Myers correctly points out that Karra identified a need for the ESM position, helped draft the job description, and asked the Personnel Board when

---

[6] Multiple sources of undisputed evidence in the Rule 56 file make clear that only the Personnel Board could close or withdraw a posting and, in fact, it was the entity that actually closed the position in this case. (Docs. # 55 at 9; # 55-1 at 29; # 51-11 at 26). That is, the Deputy Director of the Personnel Board -- not Karra -- was responsible for closing the position on February 28, 2020. (Doc. # 55-1 at 29).

the position would be posted. (Docs. # 51-6 at 18; # 51-6 at 19; # 55-1 at 5). What Myers does not point to, however, is any Rule 56 evidence that this involvement carried over into decisions about whether or not to hire for the position. Stated simply, the sizable evidentiary gap in the summary judgment record makes it clear that Myers cannot make "an affirmative showing linking" that Karra made the decision not to hire him for the ESM position. *Perkins*, 21 F. Supp. 3d at 1261. The Rule 56 evidence also fails to establish a material issue of fact about whether Karra had the power to make a final decision or even "participated in the decision" not to hire Myers. *See Quinn*, 330 F.3d at 1326; *Burstein*, 137 Fed. App'x at 208. Indeed, there is no evidence in the record that a decision was ever made with respect to the ESM position. The County never acted on the certification list issued by the Personnel Board. (Doc. # 55-1 at 29).

Finally, Myers cannot establish a *prima facie* case of retaliation because he cannot establish the causal connection element. To establish a causal connection, a plaintiff must show, at a minimum, that the specifically identified decision-maker was aware of a plaintiff's protected conduct at the time of the materially adverse action. *Goldsmith v. Bagby Elevator Co.*, 513 F.3d 1261, 1278 (11th Cir. 2008) (citing *Brungart v. BellSouth Telecomms., Inc.*, 231 F.3d 791, 799 (11th Cir.2000). For the reasons already discussed, Myers has failed to offer sufficient Rule 56 evidence to establish that Karra made the decision not to hire and/or promote him or had any influence in that decision. *See Chapter 7 Tr. v. Gate Gourmet, Inc.*, 683 F.3d 1249, 1258 (11th Cir. 2012) (requiring causal connection between the protected activity and the adverse action for purposes of § 1981 retaliation claim). Myers cannot advance his retaliation claim against Karra pas the Rule 56 hurdle.

## IV.   Conclusion

For all these reasons, this court acknowledges that Myers has properly conceded summary judgment as to Defendant Jefferson County Commission's Motion for Summary Judgment (Doc.

# 56) and concludes that Defendant Karra's Motion for Summary Judgment (Doc. # 49) is due to be granted. The court will enter a separate order contemporaneously.

**DONE** and **ORDERED** this June 3, 2022.

_____
**R. DAVID PROCTOR**
UNITED STATES DISTRICT JUDGE